UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EAST JEFFERSON MEDICAL
PLAZA, LLC

CIVIL ACTION

No. 18-5740

VERSUS

JEFFERSON PARISH HOSPITAL
DISTRICT NO. 2, PARISH OF
JEFFERSON d/b/a EAST
JEFFERSON GENERAL
HOSPITAL

SECTION: "J"(4)

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 9)** filed by Plaintiff, East Jefferson Medical Plaza, LLC ("Landlord"). Defendant, Jefferson Parish Hospital District No. 2, Parish of Jefferson d/b/a East Jefferson General Hospital ("the Hospital") opposes the motion (Rec. Doc. 18). Landlord filed a reply (Rec. Doc. 19). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the *Motion for Summary Judgment* should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from the expiration of a Master Lease that was entered for a fixed term by the original landlord and the Hospital on September 22, 1995. Landlord acquired the subject property at 4228 Houma Boulevard on February 27, 2008 and took an assignment of the Master Lease. From 2003 to 2015, Landlord and the Hospital executed a series of amendments to the definition of "Premises" under the Master Lease. On September 30, 2016, Landlord and the Hospital executed the

1

Eighth Amendment to the Master Lease, wherein the Hospital reduced the total amount of square footage to 58,643 square feet and limited the office suites in the Premises to Suites 120, 130, 200, 310, 320, 330, 510, and 600.

On April 30, 2017, the Master Lease expired. The record reflects that on May 2, 2017, a representative of the Hospital contacted Landlord to confirm that as of April 30, 2017, the Hospital had vacated and would no longer be paying rent for Suites 120, 310, 320, and 510. On May 4, 2017, Landlord advised that the suites referenced in the May 2 email are all part of the Master Lease and, barring completion of new leases as outlined in the letter of intent, the Master Lease—including the spaces that the Hospital indicated it had vacated—would continue on a month-to-month basis. After this email exchange, the Hospital continued occupying Suites 130, 200, 330, and 600 and Landlord continued invoicing the Hospital for the full amount of the rent owed for the Premises as defined in the Eighth Amendment to the Master Lease. The Hospital either paid or caused to be paid in full the rent due for Suites 130, 200, and 330. The parties dispute whether the Hospital paid or caused to be paid the full rent for Suites 120 and 310.[1] However, the record reflects that the Hospital refused to pay rent for Suites 320 and 510 and stopped paying the full rent for Suite 600.

On February 23, 2018, Landlord and the Hospital executed a Termination of Master Lease with Reservation of Rights Agreement. Pursuant to the Termination Agreement, the parties agreed that the Master Lease would terminate, rent would cease to accrue, and possession of the Premises would be surrendered to the Landlord

---

[1] Whether the Hospital paid rent for Suites 120 and 310 is irrelevant to the instant motion given that Landlord does not allege that it is owed rental amounts for these suites.

2

upon the execution of new leases for Suites 130, 140, 200, 410, and 530. Nevertheless, the parties stipulated that each party was reserving its rights, claims, and defenses against the other, including but not limited to claims for payment of past due rent and all other sums owed under the Master Lease. Thereafter, Landlord and the Hospital executed new leases for Suites 200 and 530 with an effective date of April 2, 2018. However, the parties amended the Termination Agreement to remove the requirement for execution of new leases for Suites 130, 140, and 410, stipulating that delivery of possession of these remaining suites was completed and rent ceased to accrue as of April 2, 2018.

On June 8, 2018, Landlord filed the instant action against the Hospital seeking recovery of the full rental amount owed for the Premises under the Master Lease. (*See* Rec. Doc. 1). Specifically, Landlord alleges that it is entitled to recover $434,422.37 in past due rent. (Rec. Doc. 1). Landlord filed the instant motion for summary judgment on August 21, 2018. (Rec. Doc. 9). The Hospital sought leave to file its opposition out of time on November 30, 2018. (Rec. Doc. 12). With Landlord's consent, the Hospital's opposition was filed into the record on December 12, 2018. (Rec. Doc. 18). Landlord filed a reply the same day. (Rec. Doc. 19).

## **PARTIES' ARGUMENTS**

Landlord argues that it is entitled to judgment as a matter of law because the Master Lease was reconducted on a month-to-month basis when the Hospital continued to occupy portions of the Premises after the term expired. (Rec. Doc. 9-1 at 7). Specifically, Landlord asserts that it is undisputed that the Hospital continued to

occupy Suites 130, 200, 330, and 600 of the Premises, either directly or through a subtenant, from April 30, 2017—the date the Master Lease expired—until April 2, 2018—the date the Master Lease was terminated. (Rec. Doc. 9-1 at 7). Given that "[t]here is no mechanism in the Master Lease or under Louisiana law for allowing the Hospital to partially surrender the Premises and unliterally reduce its rental obligation due under the Master Lease," Landlord argues that the Master Lease in its entirety was reconducted on a month-to-month basis. (Rec. Doc. 9-1 at 7). Landlord emphasizes that "[c]ourts interpreting article 2724 have held that '[a] reconducted lease is actually a continuation of the lease under the same terms and conditions except that the fixed term or period of duration in the old lease is voided and the reconducted lease is considered to be by the month.'" (Rec. Doc. 9-1 at 8). Based on the foregoing, Landlord concludes that the Hospital is not permitted to unilaterally redefine the Premises of a reconducted lease, and Landlord is entitled to recover the entire amount of rent for the Premises due under the Master Lease. (Rec. Doc. 9-1 at 12). Namely, Landlord asserts that the Hospital owes $43,109.08 in past due rent for Suite 320, $129,716.95 in past due rent for Suite 510, and $260,505.14 in past due rent for Suite 600. (Rec. Doc. 9-1 at 12).

The Hospital argues in opposition that summary judgment should not be granted in Landlord's favor because several issues of fact exist, the motion is premature, and the motion fails on the merits. (Rec. Doc. 18 at 1-2). The Hospital first argues that Landlord is not entitled to summary judgment because Landlord and the Hospital modified the Master Lease. (Rec. Doc. 18 at 4). Specifically, the Hospital

notes that the May 2, 2017 email from Bub Millet to Michael Pousson put Landlord on notice that the Hospital would no longer be occupying and/or paying rent for Suites 120, 310, 320, and 510. (Rec. Doc. 18 at 5-6). The Hospital asserts that Michael Pousson's response on May 4, 2017 "makes it clear that [Landlord] was agreeable to the modification by stating that … 'we also need to have any keys for the spaces indicated returned and any remaining items removed … but we're not anticipating any issues." (Rec. Doc. 18 at 6-7). Moreover, the Hospital emphasizes that after this email exchange, Landlord accepted the Hospital's rental payments for the portions of the Premises that it was occupying. (Rec. Doc. 18 at 7). The Hospital essentially argues that Landlord's acceptance of the reduced rental payments and failure to evict the Hospital constitutes an acceptance of the proposed modification to the Premises under the Master Lease. (Rec. Doc. 18 at 7). Thus, the Hospital concludes that Landlord's motion should be denied on the merits. (Rec. Doc. 18 at 8).

Additionally, the Hospital argues that the motion should be denied because questions of fact exist and the motion is premature. (Rec. Doc. 18 at 8). The Hospital contends that "[i]t is a question of fact as to whether there were oral agreements that modified the written contract." (Rec. Doc. 18 at 8). The Hospital also asserts that there is an issue of material fact as to the amount owed (if any) and whether Landlord mitigated its damages by finding new tenants after the Hospital vacated Suites 120, 310, 320, and 510. (Rec. Doc. 18 at 8). In support of its argument that the instant motion is premature, the Hospital avers that at the time the motion was filed, neither party had conducted discovery. (Rec. Doc. 18 at 8).

In reply, Landlord contends that its motion for summary judgment should be granted because the Hospital failed to produce any competent summary judgment evidence of a material factual dispute regarding its reconduction of the Master Lease or the amounts due under the Master Lease. (Rec. Doc. 19 at 1, 6). First, Landlord argues that the Hospital cannot, as a matter of law, establish an oral modification of the Master Lease. (Rec. Doc. 19 at 1). Landlord notes that Section 32 of the Master Lease prohibits amendment thereof "except by written agreement of Lessor and Lessee and the holder of any Mortgage secured by the Building." (Rec. Doc. 19 at 1). Acknowledging that a written contract may, nevertheless, be modified by an oral agreement, Landlord emphasizes that the email exchange in early May 2017 did not constitute a "meeting of the minds" sufficient to amend the Master Lease by oral agreement. (Rec. Doc. 19 at 2). Specifically, Landlord asserts that "Mr. Pousson's response demonstrates that absent the Hospital's execution of new leases, the Landlord was specifically rejecting any modification of the Master Lease." (Rec. Doc. 19 at 3). Landlord argues that when the Hospital failed to execute new leases as specified in the email, it had a choice of either terminating the Master Lease by vacating the Premises in its entirety or continuing the Master Lease on a reconducted month-to-month basis. (Rec. Doc. 19 at 3). However, Landlord argues that the Hospital could not "unilaterally change the terms of the reconducted Master Lease by re-defining … the Premises under the Master Lease to remove Suites 120, 310, 320, and 510, while continuing to claim a right of occupancy and enjoyment of Suites 130, 200, 330 and 600 under the Master Lease." (Rec. Doc. 19 at 3-4). Thus, Landlord

6

concludes that by retaining portions of the Premises after April 30, 2017 and failing to enter new leases, the Hospital reconducted the Master Lease on a month-to-month basis. (Rec. Doc. 19 at 4). Arguing that "Landlord was anything but silent," Landlord asserts that the Hospital's proposal to continue the Master Lease with less than all of the office suites defined as the Premises was flatly rejected in the May 4, 2017 email, Landlord continued to invoice the Hospital for the full amount of rent owed under the Master Lease from April 2017 until April 2018, and Landlord acknowledged receipt of the Hospital's partial rental payments on December 6, 2017 and March 13, 2018 while specifically reserving the right to collect the balance owed under the Master Lease. (Rec. Doc. 19 at 5).

Second, Landlord argues that the Court's consideration of its motion is not premature under Rule 56(b) or the Local Rules of the Eastern District of Louisiana. (Rec. Doc. 19 at 7). Landlord notes that the instant lawsuit was filed on June 8, 2018, and a scheduling conference was held on August 29, 2018. (Rec. Doc. 19 at 7). Thereafter, the Hospital failed to take any action in the case until it filed a motion seeking leave to file its opposition out of time on November 30, 2018. (Rec. Doc. 19 at 7). Accordingly, Landlord argues that the Hospital "should not now be heard to complain that the Court's consideration of this Motion for Summary Judgment is premature." (Rec. Doc. 19 at 7).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

7

to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential

element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See*, *e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

**I.    Whether Landlord's Motion for Summary Judgment is Premature**

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, if a nonmovant shows that "it cannot present facts essential to justify its opposition" to a motion for summary judgment, the Court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Rule 56(d) "provides a mechanism for dealing with the problem of premature summary judgment motions." *Murillo v. Coryell Cty. Tradesmen, LLC*, No. 15-3641, 2017 WL 228218, at *1 (E.D. La. Jan. 19, 2017) (citing *State Farm Fire & Cas., Co. v. Whirlpool Corp.*, No. 10-1922, 2011 WL 3567466, at *2 (N.D. Tex. Aug. 15, 2011)). Rule 56(d) "allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). The 2010 Advisory Committee Notes to Rule 56 specifically state that a "party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion." However, a request to defer ruling on a summary judgment motion under Rule 56(d) must "set forth a plausible basis for believing that

specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

Landlord filed the instant motion on August 21, 2018. (*See* Rec. Doc. 9). The submission date on Landlord's motion was September 12, 2018. (*See* Rec. Doc. 9). Pursuant to Local Rule 7.5 of this Court, the Hospital's opposition to Landlord's motion was due by September 4, 2018. The Court held a scheduling conference on August 29, 2018, and a Scheduling Order was entered on August 30, 2018. (*See* Rec. Doc. 10). The Scheduling Order dictates that all discovery be completed by March 25, 2019. (*See* Rec. Doc. 10). Thus, the Hospital would have been prevented from conducting discovery prior to filing its opposition *if* the Hospital had filed its opposition on September 4, 2018. However, the Hospital failed to file any opposition by the submission date and only filed a motion seeking leave to file its opposition to the motion for summary judgment out of time after Landlord filed a request for oral argument on its pending motion on November 29, 2018. (*See* Rec. Docs. 11, 12). Therefore, at the time the Hospital filed its proposed opposition on November 30, 2018, three months had passed since entry of the Scheduling Order, and discovery had commenced. Although the Hospital asserts that it "intends on issuing written discovery and conducting several depositions" prior to the March 25, 2019 discovery deadline, the Hospital has failed to show why additional discovery is necessary for it

to adequately defend against Landlord's motion. Specifically, the Hospital has failed to comply with Rule 56(d)'s requirement to submit an affidavit or declaration explaining the need for additional discovery. Considering this failure and the fact that discovery had been open for months by the time the Hospital filed its opposition to the pending motion, the Court finds that Landlord's Motion for Summary Judgment is not premature and sufficient time for discovery has been allowed.

## II.   Whether Genuine Issues of Material Fact Preclude Summary Judgment

The Hospital argues that Landlord is not entitled to judgment as a matter of law because the email exchange between Bub Millet and Michael Pousson coupled with Landlord's acceptance of rental payments for the portion of space the Hospital was occupying and failure to evict the Hospital demonstrates that the Master Lease was modified. Additionally or in the alternative, the Hospital asserts that there is a genuine issue of material fact as to whether the Master Lease was modified by oral agreement. The Court disagrees.

Louisiana Civil Code Article 2721 provides that "[a] lease with a fixed term is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession … [f]or one week in the case of [non-agricultural] leases with a fixed term that is longer than a week …." In the case of a nonagricultural lease with a term of a month or longer, the term of the reconducted nonagricultural lease is from month to month. La. Civ. Code art. 2723. "When reconduction occurs, *all provisions of the lease*

11

*continue* for the term provided in Article … 2723." La. Civ. Code art. 2724 (emphasis added). The reconducted lease is terminated by giving notice in the manner directed in the Civil Code. *Id.*

The parties do not dispute that the Master Lease was subject to a fixed term of ten years, nor do they disagree that the term of the Master Lease expired on April 30, 2017. There is also no dispute that (1) prior to April 30, 2017, the Premises consisted of Suites 120, 130, 200, 310, 320, 330, 510, and 600, and (2) the Hospital remained in possession of Suites 130, 200, 330, and 600 for nearly a year after the expiration of the term. Rather, the parties' dispute whether the Master Lease was modified such that the Hospital's continued occupancy of portions of the Premises did not reconduct the Master Lease. The Hospital does not allege that the Master Lease was terminated. Thus, it follows that if there was no modification, then the Master Lease was reconducted on a month-to-month basis until its termination on April 2, 2018 and Landlord is entitled to summary judgment.

The comments to Article 2721 make clear that either party to a lease can prevent reconduction "through a clear manifestation of a contrary intent." La. Civ. Code art. 2721, cmt. d. "Louisiana jurisprudence has long recognized ... that the Civil Code articles providing for reconduction have no application whatever when either party has clearly announced [its] intention not to renew the lease on same terms." *Id.* (internal quotations and citations omitted). In the absence of an "express contrary statement," a lessee's continued possession after the expiration of the term supports a finding that he intends to continue the lease. *Id.*

Here, it appears that the Hospital manifested an intent to prevent reconduction when Bub Millet—the Hospital's Director of Facility/Property Management—sent an e-mail to Michael Pousson—the general manager of 4228 Houma Boulevard—on May 2, 2017 providing:

> Michael,
> Just to confirm with you, we have vacated these suites effective 4/30/17 and are officially out of our leases which we will no longer be paying rent:
> 4228 Houma
> Suite 510
> Suite 320
> Suite 310
> Suite 120
>
> *Please confirm your acceptance of these vacated suites by responding to this email.*

(Rec. Doc. 18 at 6) (emphasis added). However, Michael Pousson responded to Mr. Millet's email on May 4, 2017, writing:

> Bub:
>
> *As we discussed today, these spaces are all part of a master lease. Barring a completion of new leases as outlined in the letter of intent, the master lease, inclusive of these spaces, would continue on a month-to-month basis.* We need to move quickly to complete leases on those spaces if it is [the Hospital's] intent [ ] to have the renewals commence on 5/1. *To coincide with the full execution of the leases*, we also need to have any keys for the spaces indicated returned and any remaining items removed. (I believe there may be a few items still remaining in Suite 510. I'll send you some pictures related to that in a separate email.) Michele will have some internal paperwork to complete on our end upon her final inspection, but we're not anticipating any issues.

(Rec. Doc. 18 at 6) (emphasis added). Viewing the emails together and taking into consideration the Hospital's evidence that Mr. Millet's May 2, 2017 message

13

"confirmed previous discussions and representations with [Landlord],[2] the Court concludes that the record supports a finding that the Master Lease was not modified pursuant to these electronic communications. Mr. Millet's email specifically requested that Mr. Pousson "confirm [his] acceptance of these vacated suites by responding to [the May 2] email." Mr. Pousson, however, did not confirm acceptance in his May 4, 2017 email. Instead, Mr. Pousson's response (1) clarified that the office suites referenced in Mr. Millet's email are part of the Master Lease, (2) communicated that the Master Lease would continue on a month-to-month basis if new leases were not completed as outlined in the letter of intent, and (3) indicated that the substance of the May 4 email had been communicated to Mr. Millet in discussions earlier that day. Notably, the Hospital has neither referenced nor produced any evidence to suggest that it completed new leases as outlined in the letter of intent or that there were additional communications between the parties regarding modification of the Master Lease. Rather, the record unequivocally demonstrates that after the email exchange in early May, the Hospital continued occupying Suites 130, 200, 330, and 600—four of the eight suites comprising the Premises under the Master Lease.

The Hospital's argument that Landlord's acceptance of reduced rental payments and failure to evict the Hospital constitutes acceptance of the modification to the Master Lease referenced in Mr. Millet's May 2, 2017 email falls flat. Not only does the record reflect that Mr. Pousson expressly rejected any modification barring the completion of new leases, it also demonstrates that Landlord continued invoicing

---

[2] *See* Rec. Doc. 18-1 at 2.

the Hospital for the full amount of rent due under the Master Lease and accepted partial rental payments on two dates while specifically reserving the right to collect the balance owed under the Master Lease. The Hospital has produced no competent summary judgment evidence to rebut this. Accordingly, the Court finds that the Hospital has failed to show the existence of a genuine issue of material fact as to whether the Master Lease was modified by oral agreement. The Court also concludes that there is no genuine issue of material fact with respect to the amount of rent owed. The Hospital has presented no evidence to contradict the rental amounts that Landlord alleges it is owed,[3] nor has it demonstrated that Landlord had an obligation to mitigate losses by finding new tenants after the Hospital vacated Suites 120, 310, 320, and 510. Landlord is entitled to judgment as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Summary Judgment* (Rec. Doc. 9) is **GRANTED**.

New Orleans, Louisiana, this 28th day of March, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[3] *See* Rec. Doc. 9-2 at 80, 81, 82, 83, 84, 85, 86.